Slip Op. 08-135

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                               :
SHANDONG HUARONG MACHINERY CO.,:
LTD., TIANJIN MACHINERY IMPORT :
& EXPORT CORP., and SHANDONG   :
MACHINERY IMPORT & EXPORT CO., :
                               :
            Plaintiffs,        :
                               :
      v.                       : Before: Richard K. Eaton, Judge
                               :
UNITED STATES,                 : Court No. 06-00345
                               :
            Defendant,         :
      and                      :
                               :
AMES TRUE TEMPER,              :
                               :
            Defendant-Intervenor.:
_____:
```

OPINION

[Defendant United States Department of Commerce's motion to dismiss granted and case dismissed]

Dated: December 10, 2008

*Hume & Associates LLC* (*Robert T. Hume* and *Marisol Rojo*), for plaintiffs Shandong Huarong Machinery Co., Ltd., Tianjin Machinery Import & Export Corp., and Shandong Machinery Import & Export Company.

*Gregory G. Katsas*, Assistant Attorney General*; Jeanne E. Davidson,* Director, *Patricia M. McCarthy*, Assistant Director, United States Department of Justice, Civil Division, Commercial Litigation Branch, (*Courtney E. Sheehan*), Office of the Chief Counsel, Import Administration, United States Department of Commerce (*Nithya Nagarajan*), of counsel, for defendant.

*Wiley Rein LLP* (*Eileen P. Bradner* and *Timothy C. Brightbill*), for defendant-intervenor Ames True Temper.

Eaton, Judge: Before the court is the question of whether plaintiffs' case, challenging the results in an antidumping periodic review, should be dismissed as moot. On October 31, 2007, defendant the United States, on behalf of the United States Department of Commerce ("Commerce" or "the Department"), filed a motion to dismiss certain counts of plaintiffs' complaint on the grounds that the merchandise that was the subject of the counts had been liquidated. *See* Def.'s Partial Mot. Dismiss ("Def.'s Mot."). In response, plaintiffs Shandong Huarong Machinery Co., Ltd., Tianjin Machinery Import & Export Corp., and Shandong Machinery Import & Export Company replied, and asked the court to find that all claims in the complaint were moot and to dismiss the action. *See* Pls.' Resp. Def.'s Mot. Dismiss ("Pls.' Resp."). Defendant subsequently agreed that a full dismissal was appropriate.[1] *See* Def.'s Reply Pls.' Resp. ("Def.'s Reply").

After initially supporting defendant's motion to dismiss ("Def.-Int.'s Resp."), defendant-intervenor Ames True Temper ("Ames" or "defendant-intervenor") filed a reply brief, opposing complete dismissal and seeking relief in the form of the imposition of the duty rates found in the final results of the periodic review to the already liquidated entries. *See* Def.-Int.'s Reply Br. ("Def.-Int.'s Reply"). Accordingly, the only

---

[1]    In light of defendant's position, the court will treat its motion as one to dismiss the complaint in its entirety.

party that seeks to continue the court's participation in this case is Ames.  For the reasons that follow, the court grants defendant's motion to dismiss.

BACKGROUND

On September 14, 2006, Commerce issued the Final Results of Antidumping Duty Administrative Reviews and Final Rescission and Partial Rescission of Antidumping Administrative Reviews, 71 Fed. Reg. 54,269 (Dep't of Commerce Sept. 14, 2006) ("Final Results"). These results addressed the fourteenth administrative review of the antidumping duty order for heavy forged hand tools, finished or unfinished, with or without handles from the People's Republic of China, entered or withdrawn from the warehouse for consumption from February 1, 2004, through January 31, 2005 (the "Antidumping Order").  *See* Pls.' Resp. 2.  Plaintiffs challenged the Final Results by filing their complaint in this Court on October 19, 2006.  On November 13, 2006, in order to enjoin the liquidation of the subject merchandise during the pendency of this action, plaintiffs filed a consent motion for a preliminary injunction.

The injunction order, a draft of which was prepared by plaintiffs, provided that it would affect entries of subject merchandise that:

> remain unliquidated as of 5:00 p.m. on the
> fifth business day after which copies of this
> Order are personally served on the following

individuals and received by them or their
delegates

Ann Sebastian, APO/Unit Docket Center, Room 1870
Import Administration, International
Trade Administration
U.S. Department of Commerce, 14th Street and
Constitution Avenue, NW
Washington, DC

Hon. Robert C. Bonner, Commissioner of Customs
Attn: Alfonso Robles, Esq., Chief Counsel, U.S. Customs
Service
Room 44B, 1300 Pennsylvania Avenue, NW
Washington[,] DC

Stephen Tosini, Esq., United States Department of
Justice
Civil Division, Commercial Litigation Branch
1100 L Street, NW
Washington[,] DC 20530

*Shandong Huarong Machin. Co. v. United States*, Court No. 06-00345, at 2-3 (Nov. 17, 2006) (injunction order).

Although the injunction order was signed and entered, plaintiffs failed to provide for its proper service on the officials named therein, including Ann Sebastian at Commerce. Def.'s Mot. 3. As a result, Ms. Sebastian did not direct United States Customs and Border Protection ("Customs") to suspend the liquidation of entries subject to the challenged administrative review. *See* Def.'s Mot. 3, Ex. A.

Subsequently, Commerce learned that the injunction order had not been served and contacted plaintiffs' counsel. Def.'s Mot. 3. On May 2, 2007, plaintiffs' counsel mailed copies of the injunction order to the intended recipients and on May 8, 2007

served it by hand on Ms. Sebastian.  Def.'s Mot. 3.

On October 31, 2007, defendant filed its motion to dismiss certain counts in the complaint.  Defendant argued that these counts were moot because, as a result of the failure to timely serve the injunction order, the entries of plaintiffs' subject merchandise were deemed liquidated on March 14, 2007 pursuant to 19 U.S.C. § 1504(d).  *See generally* Def.'s Mot.[2]  Subsequent to the filing of plaintiffs' response to defendant's motion, defendant and plaintiffs agreed that dismissal of the full complaint was appropriate.[3]  Def.'s Reply 1 n.1.

Ames, however, declined to consent to a dismissal[4] and asks

---

[2]    Defendant stated in its motion to dismiss that a live case or controversy remained with respect to certain counts because a judgment in plaintiffs' favor regarding those counts "could alter the cash deposit rate upon merchandise related to those counts."  Def.'s Mot. 8; *see Hylsa S.A. de C.V. v. United States*, 31 CIT __, __, 469 F. Supp. 2d 1341, 1345 (2007).  As explained *infra*, defendant subsequently agreed that the entire complaint should be dismissed.  *See* Def.'s Reply 3.

[3]    Defendant noted

although we disagree with plaintiffs' conclusion concerning the Court's jurisdiction over this matter, the burden remains with plaintiffs who have indicated that they do not intend to satisfy it.  Consequently, because plaintiffs contend that this court lacks subject matter jurisdiction and has [sic] evidenced an intent not to prosecute its claims, the complaint should be dismissed in its entirety.

Def.'s Reply 3.

[4]    Upon receipt of plaintiffs' response,

(continued...)

the court to order reliquidation of plaintiffs' merchandise at the rates determined in the Final Results, or to remand the case to Commerce with instructions to order liquidation at those rates.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1581(c): "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A [19 U.S.C. § 1516a] of the Tariff Act of 1930."

Because it wishes the court to proceed, it is Ames' burden to demonstrate that jurisdiction exists. *See Abitibi-Consol. Inc. v. United States*, 30 CIT __, __, 437 F. Supp. 2d 1352, 1355 (2006).

---

[4](...continued)
        defendant sought and plaintiff[s] agreed to
        seek a stipulation of dismissal.  However,
        defendant-intervenor . . . would not consent
        to the dismissal of plaintiffs' case,
        indicating that it intended to request
        reliquidation of plaintiffs' entries that had
        been deemed liquidated by operation of law.

Def.'s Reply 1 n.1 (citation omitted).

DISCUSSION

I.   Suspension, Liquidation and Injunctions

The question of the court's jurisdiction in this matter turns on the liquidation[5] process for entries of merchandise subject to a periodic administrative review.  As further explained below, generally, once entries have been liquidated, any question relating to the amount of duties to be applied to those entries is rendered moot.  Thus, the availability of Ames' claim for relief turns on the statutory process of liquidation.

In order to ensure that the rate of duty determined in the final results of a periodic review are applied to subject merchandise, the statute provides that "[l]iquidation of a particular class of entries is suspended when Commerce publishes in the Federal Register an affirmative preliminary or final determination in an antidumping investigation covering those entries."  *Int'l Trading Co. v. United States*, 281 F.3d 1268, 1272 (Fed. Cir. 2002) ("*Int'l Trading*") (citations omitted); *SKF USA Inc. v. United States*, 28 CIT 170, 181, 316 F. Supp. 2d 1322, 1333 (2004) ("*SKF I*") ("If the ITA's determination is affirmative, all entries of the subject merchandise are ordered suspended.") (citing 19 U.S.C. § 1673b(d)); 19 U.S.C.

---

[5]     "Liquidation of a party's entries is the final computation or ascertainment of duties accruing on those entries."  *SKF USA Inc. v. United States*, 28 CIT 170, 173, 316 F. Supp. 2d 1322, 1327 (2004) (citations omitted).

§ 1673b(d)(2); 19 U.S.C. § 1673d(c)(1)(C).   Thus, following an

affirmative unfair trade finding, liquidation is suspended to

preserve the entries for liquidation at the assessment rate found

in the final determination. *Int'l Trading*, 281 F.3d at 1272.  The

suspension of liquidation is terminated, however, when the final

results are published in the Federal Register so that Customs may

liquidate the merchandise at the finally determined rate.  *Id.;*

*see* 19 U.S.C. § 1673e(a) (providing that antidumping duty order

should set forth the antidumping duty rate and directing Customs

officers to assess antidumping duties promptly against the

entries subject to the order); 19 U.S.C. § 1675(a)(2)(C)

(providing that the final results of an administrative review

should set forth the determination of antidumping duty rates that

"shall be the basis for the assessment of countervailing or

antidumping duties" on the subject entries).

       If Customs does not act, however, another provision comes

into play.  By statute, entries of merchandise not liquidated by

Customs within six months of the removal of suspension of

liquidation are deemed liquidated at the entered rate:

> Any entry (other than an entry with respect
> to which liquidation has been extended under
> subsection (b) [relating to an extension of
> the six month period by the Secretary of
> Commerce] of this section) not liquidated by
> the Customs Service within 6 months after
> receiving such notice shall be treated as
> having been liquidated at the rate of duty,
> value, quantity, and amount of duty asserted

> by the importer of record or (in the case of a drawback entry or claim) at the drawback amount asserted by the drawback claimant.

19 U.S.C. § 1504(d)(2006).  Thus, for deemed liquidation to take place:

> (1) the suspension of liquidation that was in place must have been removed; (2) Customs must have received notice of the removal of the suspension; and (3) Customs must not liquidate the entry at issue within six months of receiving such notice.

*Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1376 (Fed. Cir. 2002) ("*Fujitsu*").

Deemed liquidation, however, is not the necessary result of the passage of time.  Where a final determination[6] is challenged in this Court, all liquidation, including deemed liquidation, may be enjoined during the pendency of the action.  19 U.S.C. § 1516a (c)(2) ("The United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of the . . . administering authority . . . upon request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances.").  The purpose of the injunction is to suspend liquidation and to preserve merchandise for liquidation

---

[6]    Determinations subject to this provision are described in 19 U.S.C. § 1516a(a)(2).  *See* 19 U.S.C. § 1516a(c)(2).

at the rate finally determined following judicial review.[7]

II.  The Court Lacks Subject Matter Jurisdiction

    A.  The Subject Entries Are Deemed Liquidated Pursuant to 19 U.S.C. § 1504(d)

The "mootness doctrine" results from the case or controversy requirement found in Article III of the United States Constitution.  *See* 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533 (2d ed. 1987).  The Supreme Court has explained that a case becomes moot when it has "lost its character as a present, live controversy of the kind that must exist if we are to avoid [advisory] opinions on abstract propositions of law."  *Hall v. Beals*, 396 U.S. 45, 48 (1969) (citations omitted).  This requirement of an actual controversy exists at all stages of an action.  *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 461 n.10 (1974).

In the context of an unfair trade case, Courts have generally found that once entries have been liquidated, there is no case or controversy with respect to the duty rate to be applied to them.  As a result, liquidation moots a court challenge to the duty rate imposed in an administrative review:

---

    [7]  In *Fujitsu*, 283 F.3d at 1379, the Federal Circuit found that the suspension would end when the court decision in the action was "final" or conclusive such that it could no longer be appealed, i.e., when "the time for petitioning the Supreme Court for *certiorari* expires without the filing of a petition."  *Id*.

"Once liquidation occurs, it permanently deprives a party of the opportunity to contest Commerce's results for the administrative review by rendering the party's cause of action moot." *SKF I*, 28 CIT at 173, 316 F. Supp. 2d at 1327 (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809-810 (Fed. Cir. 1983) ("*Zenith*")); *see also Fujitsu*, 283 F.3d at 1376. In this respect, Courts have made no distinction between actual liquidation made by Customs and deemed liquidation. *See Koyo Corp. v. United States*, 497 F.3d 1231, 1237 (Fed. Cir. 2007) ("*Koyo*") (finding that, absent a valid protest, "the rate of duty that applies to a deemed liquidation under 19 U.S.C. § 1504(d) is the duty rate claimed on the importer's entry papers.") (citations omitted).

All parties to this action agree that the injunction order was ineffective because it was not properly served and that the three conditions for deemed liquidation have been met. Notably, Ames does not dispute that the merchandise has been liquidated pursuant to the deemed liquidation statute. *See* Def.-Int.'s Reply 6. Thus, it follows that the liquidation of the subject merchandise has eliminated any case or controversy cognizable by the court as to the amount of any antidumping duty rate to be applied to that merchandise. *See Zenith*, 710 F.2d at 810 (stating "liquidation would indeed eliminate the only remedy available to Zenith for an incorrect review determination by

depriving the trial court of the ability to assess dumping duties on Zenith's competitors in accordance with a correct margin on entries in the . . . review period."); *Cemex, S.A. v. United States*, 384 F.3d 1314 (Fed. Cir. 2004) ("*Cemex*") (holding that domestic producers could not gain relief by way of reliquidation upon challenging Customs' erroneous liquidation of entries); *see also Shinyei Corp. v. United States*, 524 F.3d 1274, 1283 (Fed. Cir. 2008) (stating that "when an entry is deemed liquidated, the duty rate is the deposit rate, and Customs may not recover any *additional* duties from the importer thereafter.") (citations omitted).

    B.    The Court is Without Jurisdiction to Hear Ames'
          Underlying Claims Which Were Rendered Moot by
          Liquidation

Although Ames concedes that plaintiffs' entries have been liquidated, it contends that the court should not dismiss this case because a live case or controversy remains:

> the vast majority of subject merchandise was
> entered at inappropriately low rates,
> including some rates that were obtained
> through fraudulent means.  During the course
> of recent administrative reviews, Commerce
> has determined that certain respondents had
> engaged in agent sales schemes, a finding
> that this Court subsequently affirmed.  Using
> these schemes, certain low-margin producers
> "rented out" their antidumping duty margin to
> high-margin producers in exchange for a
> nominal commission fee.  As a result, due to
> the overlap in administrative reviews and the

> existence of the agent sales, a large
> percentage of the entries in the current
> proceeding appear to have been entered at the
> low duty rates from prior reviews, before the
> agent sales schemes were discovered and fully
> addressed by Commerce and this Court.

Def.-Int.'s Reply 3 (citations omitted).  Put another way, Ames'

argument is that, because plaintiffs' merchandise was liquidated

at "inappropriately low" duty rates, the court should order

reliquidation at the rates found in the Final Results.  Ames

acknowledges that these "inappropriately low" duty rates were the

product of prior administrative reviews, but insists that they

have become "intertwined with the claims in this action."  Def.-

Int.'s Reply 4.  Ames apparently believes that the claimed

illegitimacy of the entered duty rates provides a basis for

jurisdiction.  *See* Def.-Int.'s Reply 2.

Ames' arguments are unpersuasive.  As noted, the general

rule is that liquidation renders moot an action brought under 19

U.S.C. § 1516a(a)(2)(A)(i)(I) challenging the amount of the

dumping duties assessed on subject merchandise following a final

determination. *See SKF I*, 28 CIT at 173, 316 F. Supp. 2d at 1327

(citing *Zenith*, 710 F.2d at 809-810) ("Once liquidation occurs,

it permanently deprives a party of the opportunity to contest

Commerce's results for the administrative review by rendering the

party's cause of action moot.").

While the Court of Appeals for the Federal Circuit and this

Court have recognized exceptions[8] to the general rule, these

exceptions are inapplicable here.  That is, no Court has found

that it has jurisdiction to order reliquidation, at an increased

rate, because merchandise was deemed liquidated at an

inappropriately low entered rate determined in a previous review.

As defendant points out, those cases where reliquidation has been

ordered all involve errors made by government agencies in

contravention of a statute or in violation of a court ordered

---

[8]     For example, there are circumstances where, following
liquidation, this Court may retain jurisdiction to decide matters
relating to the dumping margins found in the final determination.
*See AK Steel Corp. v. United States*, 27 CIT 1382, 281 F. Supp. 2d
1318 (2003) (holding Customs' liquidation, despite the presence
of a valid injunction, void *ab initio*); *Hylsa S.A. de C.V. v.
United States*, 31 CIT __, __, 469 F. Supp. 2d 1341, 1345
(2007)(holding that although liquidation mooted any claim for
reliquidation, it did not moot challenge to the dumping margin
determined in an administrative review where a finding of a non-
*de-minimis* margin could have consequences in the ability to seek
the revocation of the underlying order); *Koyo*, 497 F.3d at 1231
(holding that importer may protest the failure of Customs to
liquidate entries at the rate contained in Commerce's
instructions, even though such failure had resulted in the
passage of time necessary for deemed liquidation to take place);
*Gerdau Ameristeel Corp. v. United States,* 519 F.3d 1336, 1340-
1343 (Fed. Cir. 2008) (holding that liquidation did not moot
challenge to dumping margins themselves because "there remains an
issue having ongoing legal consequences" relating to the possible
revocation of the underlying antidumping order, but that
liquidation ended plaintiff's right to challenge the duty
assessed on liquidated merchandise); *Shinyei Corp. v. United
States*, 524 F.3d 1274 (Fed. Cir. 2008) (holding that deemed
liquidated entries may be reliquidated where Commerce issues
erroneous liquidation instructions); *but see SKF USA, Inc. v.
United States*, 512 F.3d 1326, 1332 (Fed. Cir. 2008) ("*SKF II*")
(holding that, where no injunction was entered, deemed
liquidation rendered moot importer's challenge to correctness of
antidumping duty determined by Commerce).

injunction.  *See* Def.'s Reply 4.  Those cases are far removed from deemed liquidation resulting from a law office failure.

Thus, there is nothing in defendant's case that would take it out of the rule laid down in *SKF I*.  *See SKF I*, 28 CIT at 174, 316 F. Supp. 2d at 1327 ("After an antidumping review determination, if a party's entries are liquidated prior to judicial review of the determination and antidumping duties are assessed, any outstanding challenges as to those entries are rendered moot because liquidation, absent errors by Commerce or Customs, places the entries outside the jurisdiction of the court.") (footnote and citation omitted).  Defendant makes no claim that it seeks the court's assistance through a finding that would correct an agency mistake.  Therefore, the only remedy Ames seeks – reliquidation – is one the court cannot order as a consequence of the application of the mootness doctrine.

III. Ames' Claims Are Beyond the Scope of The Action Before This Court

Even if the court had jurisdiction, Ames' action would be dismissed.  Under the theory proposed by Ames, the court is asked to find that the entered rate was "inappropriately low."  In order to do so, the court would be required to reopen the thirteenth administrative review, or additional prior reviews,

which provided the basis for the entered rate.  This the court may not do.  *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1361 (Fed. Cir. 2006) (finding that administrative reviews are limited to entries made during the period of review in issue and that "issues relating to entries from a prior year that were not raised for Commerce review during the appropriate POR" would "impair the finality of any one annual review, potentially prolonging a [countervailing duty] dispute far beyond the year to which it relates").  Here, this Court has previously upheld Commerce's final results in prior administrative reviews and defendant-intervenor may not seek to relitigate the issues raised in the context of those cases.  *See, e.g., Ames True Temper v. United States*, 32 CIT __, Slip Op. 08-8 (Jan. 18, 2008) (not reported in Federal Supplement) (thirteenth administrative review)*; Shandong Huarong Machin. Co. v. United States*, 31 CIT __, Slip Op. 07-169 (Nov. 20, 2007) (not reported in the Federal Supplement) (twelfth administrative review)*; Shandong Huarong Machin. Co. v. United States*, 31 CIT __, Slip Op. 07-3 (Jan. 9, 2007) (not reported in the Federal Supplement) (eleventh administrative review).

Finally, the validity of the entered rate is not a subject of this action.  That is, it was not raised in plaintiffs' complaint, defendant's answer, or defendant-intervenor's motion to intervene.  In addition, the evidence upon which Ames hopes to

rely is not found in the record of the fourteenth administrative review, but rather in that of the thirteenth or prior reviews. That being the case, defendant-intervenor cannot now seek to begin what is essentially a new lawsuit in the context of one that both plaintiffs and defendant wish dismissed. *See Parkdale Int'l v. United States*, 30 CIT __, __, 429 F. Supp. 2d 1324, 1337 (2006) ("Intervenor is limited to the field of litigation open to the original parties, and cannot enlarge the issues tendered by or arising out of plaintiff's bill.") (citing *Torrington Co. v. United States*, 14 CIT 56, 57, 731 F. Supp. 1073, 1075 (1990)). As defendant points out, "[t]o the extent that defendant-intervenor desires to bring an action in its own right to protect whatever its own interests may be, it may do so." Def.'s Resp. Ct.'s Aug. 25, 2008 Letter 4. What defendant-intervenor may not do, however, is append a new cause of action, based on a record not before the court, to plaintiffs' existing suit.

## CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss.  Judgment shall be entered accordingly.


                                    /s/ Richard K. Eaton
                                    Richard K. Eaton

Dated:    December 10, 2008
          New York, New York